1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DWAYNE ALLEN DAKE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 11-CV-05980 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 4; Consent to Proceed Before a United States Magistrate Judge, ECF No. 8). Plaintiff has filed an Opening Brief and defendant has filed a Response (*see* ECF Nos. 17, 21).

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for his failure to credit the opinions of examining doctors and a

mental health social worker regarding plaintiff's specific functional limitations. For these reasons and based on the relevant record, the Court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, DWAYNE ALLEN DAKE, was born in 1980 and was twenty-one years old on his alleged date of disability onset of February 28, 2001 (Tr. 140). Plaintiff was in special education classes and dropped out of high school before completing the 10th grade (Tr. 264). He had been diagnosed previously with attention deficit hyperactivity disorder ("ADHD"), depression, social anxiety disorder, bipolar, and post traumatic stress disorder ("PTSD") (Tr. 169). He has a history of closed head injury with loss of consciousness and methamphetamine dependence, in remission (Tr. 66). He used methamphetamine daily and heavily for approximately one and one-half years between 2002 and 2004 (Tr. 264-65). He was in prison for five years and was released in December 2008 (*id.*). During his incarceration, he received mental health care and "competency restoration" at Western State Hospital in 2004. He also received out-treatment mental health care at Greater Lakes Mental Health (Tr. 263-64), as well as treatment for methamphetamine use (Tr. 265). He received his GED while in prison (Tr. 264).

His severe impairments include right knee arthralgia/joint pain, obesity, headaches, bipolar disorder, post-traumatic stress disorder, attention deficit disorder not otherwise specified, and methamphetamine dependence in remission (20 CFR 416.920(c)) (Tr. 23-24). Plaintiff's appeal is centered only on his mental impairments.

Although he has worked sporadically, he has been unable to keep a job. His longest job was working security for three months (Tr. 264).

PROCEDURAL HISTORY

Plaintiff filed applications for supplemental security income on December 26, 2008 (Tr. 74). His application was denied initially and following reconsideration (*id.* at 74-75). His requested hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on January 27, 2011 and the ALJ issued a written decision on February 3, 2011, concluding that plaintiff was not disabled under the Social Security Act (*see* Tr. 21-34).

The Administration denied plaintiff's request for a review (Tr. 1-5), making the written decision by the ALJ the final agency decision subject to judicial review (*id.*). *See* 20 CFR § 404.981. In November of 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (*see* ECF No. 1). On February 7, 2012, defendant filed the sealed administration record on this matter ("Tr.") (*see* ECF No. 10).

In his Opening Brief, plaintiff challenges:

1. The ALJ's finding regarding plaintiff's residual functional capacity ("RFC");
2. The ALJ's finding regarding plaintiff's credibility;
3. The ALJ's review of the opinions of examining doctors, Christa Robbins, Ph.D and Colin Dauria, M.D., and those of Linda McNellis, MSW, LICSW, a mental health social worker; and

4. The ALJ's consideration of the evidence as a whole to determine if plaintiff met an administrative listing.

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

ORDER ON PLAINTIFF'S COMPLAINT - 4

1 | 389, 401 (1971). Regarding the question of whether or not substantial evidence supports
2 | the findings by the ALJ, the Court should "'review the administrative record as a whole,
3 | weighing both the evidence that supports and that which detracts from the ALJ's
4 | conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting*
5 | *Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently
6 | whether or not "'the Commissioner's decision is (1) free of legal error and (2) is
7 | supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.
8 | 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir.
9 | 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion

when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

The issues raised by plaintiff largely revolve around the ALJ's consideration of the mental health evaluations and the resulting impact on plaintiff's residual functional capacity. Therefore, rather than dealing with each of plaintiff's issues in order, this Court will review the ALJ's handling of such evidence.

In making his determination that plaintiff was capable of working, the ALJ relied principally on state agency psychologist consultants, who reviewed the record and found that plaintiff "was able to understand, remember, and carryout simple, repetitive, and some detailed tasks, and was able to make simple work-related decisions" (Tr. 30). The ALJ found that plaintiff would do best in work that required "no public contact and limited co-worker contact" (*id.*). He also concluded that these reviews were "consistent with the mental status examination findings" (*id.*). But they weren't.

In at least four portions of his written decision, the ALJ states that plaintiff's mental status examinations were relatively unremarkable and failed to document significant symptoms or limitations (*see* Tr. 28, 29, 30, 40). But, again, to the contrary, the information provided by the examining psychiatrist, psychologist and mental health therapist repeatedly set forth moderate to severe limitations in a number of areas, contrary to the ALJ's findings.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

Here, the ALJ relied almost exclusively on the reviewing consultants who had never examined or treated plaintiff (Tr. 30). And, contrary to the statements made by the ALJ, the examining physicians found marked and severe limitations.

Christa Robbins, PhD. examined plaintiff at the request of the Department of Social and Health Services on December 12, 2008 (Tr. 234). She noted marked limitations in the area of depressed mood, paranoid behavior and global illness, and severe limitations in the areas of social withdrawal, motor agitation, thought disorder and hyperactivity (Tr. 235). When assessing plaintiff's specific functional limitations relative to work activity, she noted marked limitation in his ability to perform routine tasks and a severe limitation in his ability to understand, remember and follow complex instructions (Tr. 236). Plaintiff also had marked limitations in his ability to respond appropriately to and tolerate pressures and expectations of a normal work setting (*id.*).

The ALJ, rather than giving specific and legitimate reasons for rejecting this examining psychologist's conclusions, simply stated that Dr. Robbins' findings were consistent with moderate limitations (Tr. 25). *See Lester, supra*, 81 F.3d at 830-31. To the contrary, Dr. Robbins concluded that claimant's ADHD symptoms would interfere with his ability to function in work related activities (Tr. 236). She concluded that he was chronically mentally ill and this would impair his functionality for life (Tr. 237). At best, she concluded that with medication for ADHD claimant "might be able to work" (Tr. 237). This is hardly a conclusion that is consistent with the state agency consultants or with the ALJ's findings. The ALJ must explain why his interpretations are more correct than those of the doctors. *See Reddick, supra*, 157 F.3d at 725.

Furthermore, in reviewing Dr. Robbins' conclusions, the ALJ broadly stated that her conclusions were not consistent with claimant's subjective reports or significant objective findings and documented activities (Tr. 31). The ALJ did not set out a

"detailed and thorough summary of the facts" conflicting with these conclusions, as required. *See Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The ALJ also failed to provide specific and legitimate reasons for rejecting the opinions of examining physician Colin Dauria, M.D. *See Lester, supra*, 81 F.3d at 830-31. Dr. Dauria is a psychiatrist who performed a "comprehensive psychiatric evaluation" on April 23, 2009. He diagnosed plaintiff with a post-traumatic stress disorder, ADHD, not otherwise specified, methamphetamine dependence, with a history of closed head injury and a GAF score of 45 (Tr. 266). Dr. Dauria, in assessing plaintiff's functional abilities, concluded as follows:

> The claimant is not capable of managing his own finances at this time as he has a history of bouncing checks. The Claimant is able to perform simple and repetitive tasks. He would have mild difficulty with more detailed and complex tasks as he had difficulty with abstract thinking and divergent thinking.
>
> He would be able to perform work activities on a consistent basis without special or additional supervision as I did not need to prompt him several times or repeat instructions during our interaction. He

> would be able to accept instructions from supervisors as he was able to perform a specific three step command and follow directions during this interview. He would have difficulty interacting with co-workers due to anxious affect. He would have difficulty maintaining regular attendance due to increased anxiety and profound isolation. He may have difficulty completing a normal work week without interruptions due to his profound anxiety and isolation. He may have difficulty dealing with the usual stress encountered in competitive work.

(Tr. 267).

These conclusions are hardly a model of clarity and, understandably, they could be read to support a finding of disability or a finding of nondisability. The conclusions are ambiguous. The ALJ characterized Dr. Dauria's opinions as "equivocal" and this Court would agree with that assessment. But rather than evaluate the specific limitations noted by Dr. Dauria and relate those limitations to his findings regarding plaintiff's RFC, the ALJ simply rejected Dr. Dauria's findings because they were not based on "objective findings" but on claimant's subjective reports. Again, an examining psychiatrist's "comprehensive psychiatric evaluation" is based on more than subjective complaints and is considered an objective, rather than subjective, analysis. While Dr. Dauria's opinions may be equivocal, they certainly do not support the ALJ's conclusions regarding plaintiff's ability to engage in substantial gainful activity for a continuous period of not less than twelve months. For these reasons, this Court concludes that the ALJ's findings are not supported by substantial evidence in the record as a whole. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))

Following remand of this matter, if the ALJ determines again not to rely on the functional assessment from plaintiff's examining doctors, the ALJ must explain adequately why his interpretation of the medical evidence is more correct than those of the doctors. *See Reddick, supra*, 157 F.3d at 725; *see also Blankenship, supra*, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873074 (D.C. Cir. 1987)). This is important especially in this case, where plaintiff suffers from mental impairments and the ALJ seeks to discount the opinions of examining doctors who have performed mental status examinations.

The mental status examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" *Trzepacz, supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that his "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d

1462, 1465 (9th Cir. 1996). Therefore, it is important especially in this matter for the ALJ to credit appropriately the opinions of plaintiff's doctors and psychologists.

The ALJ also rejected the conclusions of Linda McNellis, MSW, LICSW, who assessed plaintiff with marked limitations in his ability to understand and follow simple instructions and his ability to relate appropriately with co-workers and supervisors.  She also assessed severe limitations in his ability to interact appropriately with the public.  Again, the ALJ rejected these opinions largely because they were not based on objective mental status examinations, but rather claimant's subjective descriptions of his symptoms (Tr. 32).  Ms. McNellis concluded that plaintiff was "not capable of doing any work" and the ALJ concluded that her opinion was "unsupported and not consistent with the record" (Tr. 32).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," *see* 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources[1], *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may

---

[1] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," *see* 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," *see* 20 C.F.R. § 404.1513(d)(3).

disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (*quoting Van Nguyen, supra*, 100 F.3d at 1467) (*citing Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)).

Ms. McNellis' opinions are evaluated as lay testimony under this standard. The ALJ's discrediting of Ms. McNellis' conclusions based simply on the statement that her opinion is "unsupported and inconsistent with the record" does not meet the legal standard for rejecting this evidence. He also concluded that "there were no significant objective mental status examination findings contained in the evaluation to support the limitations" (Tr. 32). Again, the record includes a "Mental Status Exam-Reassessment" that Ms. McNellis completed on October 1, 2010, which noted a number of observations in her office that were consistent with his reports of, among other things, depression,

anxiety, low energy, and other symptoms consistent with plaintiff's previous diagnosis of bipolar 1 disorder and depression (*see* Tr. 336 – 40).

For these reasons, this matter should be reversed and remanded for further consideration of these findings.

Plaintiff requests that this matter be reversed and remanded for the immediate award of benefits (ECF. No. 17, page 22). Rather, this matter should be remanded for further administrative proceedings.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen*, 80 F.3d at 1292. There is a large volume of medical and other evidence, and the record is not conclusive.

1  Furthermore, the decision whether to remand a case for additional evidence or simply to
2  award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876 F.2d 683,
3  689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir.
4  1988)).

5      The ALJ is responsible for determining credibility and resolving ambiguities and
6  conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998);
7  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).    If the medical evidence in the
8  record is not conclusive, sole responsibility for resolving conflicting testimony and
9  questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th
10 Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing*
11 *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).
12
13     Therefore, remand is appropriate to allow the Commissioner the opportunity to
14 consider properly all of the medical evidence as a whole and to incorporate the properly
15 considered medical evidence into the consideration of plaintiff's residual functional
16 capacity. *See Sample, supra*, 694 F.2d at 642.
17     In addition, a determination of a claimant's credibility relies in part on the
18 assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). This Court already has
19 determined that the ALJ failed to evaluate properly the medical evidence. The Court also
20 notes that, the ALJ relied in large part on the flawed evaluation of the medical evidence
21
22 when making his findings regarding plaintiff's credibility.
23     Therefore, plaintiff's testimony and credibility also must be assessed anew
24 following remand of this matter.

Case 3:11-cv-05980-JRC   Document 22   Filed 10/05/12   Page 16 of 16

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 5th day of October, 2012.

J. Richard Creatura
United States Magistrate Judge

ORDER ON PLAINTIFF'S COMPLAINT - 16